DECISION
{¶ 1} Relator, Louise Taylor, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied her application for permanent total disability compensation, and to issue an order that grants such compensation or one that meets the requirements of State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ. R. 53(C) and Section (M), Loc. R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided the requested writ of mandamus should be denied. Relator has filed objections to the magistrate's decision.
 {¶ 3} In her objections, relator is essentially repeating the same arguments that were considered and rejected by the magistrate. As the magistrate determined, Dr. Jeffrey Mikutis' conclusion that relator could perform medium strength work is not inconsistent with a finding of zero percent impairment as well as an ability to perform sustained remunerative employment. A worker need not be able to perform heavy labor to be found to be capable of engaging in sustained remunerative employment. For the reasons adequately expressed by the magistrate, the report of Dr. Mikutis is not inconsistent.
 {¶ 4} Likewise, the commission's previous finding of permanent partial disability is not res judicata in a permanent total disability determination. As the Ohio Supreme Court stated in State ex rel. Gen. Motors Corp. v. Indus. Comm. (1975), 42 Ohio St.2d 278, 282:
 {¶ 5} "As our prior cases have noted, a distinct difference exists between the goals of compensation for partial disability and for permanent and total disability. Although an award for permanent and total disability is generally aimed at compensating for impairment of earning capacity, benefits for partial disability are more akin to damages for work-related injuries. * * *"
 {¶ 6} By relying on the report of Dr. Mikutis, the staff hearing officer concluded that relator was able to engage in sustained remunerative employment and was not permanently totally disabled.
 {¶ 7} Upon a review of the magistrate's decision and an independent review of the file, the objections to the magistrate's decision are overruled and this court adopts the magistrate's decision as its own, and the requested writ of mandamus is denied.
Objections overruled, writ of mandamus denied.
BRYANT and TYACK, JJ., concur.
 IN MANDAMUS {¶ 8} Relator, Louise Taylor, filed this original action asking the court to issue a writ of mandamus compelling respondent Industrial Commission of Ohio to vacate its order denying his application for compensation for permanent total disability ("PTD") and to issue an order granting the requested compensation or to issue an order that complies with applicable law.
Findings of Fact
 {¶ 9} In 1967, Louise Taylor ("claimant") sustained a work-related injury, and her workers' compensation claim was allowed for aggravation of preexisting degenerative disc disease of the lumbar spine.
 {¶ 10} In January 2001, claimant filed a PTD application, indicating that she was 64 years old, had a high-school education, could read, write and do basic math, and had a work history as a cashier.
 {¶ 11} Claimant's application was supported by a medical opinion from her physician, Robert Gardner, D.O., who stated that she was 100% disabled and would be unable to engage in any remunerative employment.
 {¶ 12} On behalf of the commission, claimant was examined by Jeffrey Mikutis, D.O., who reviewed her history of treatment:
 {¶ 13} "On the date of the injury, the claimant states that she was putting some candy on a rack, and the candy weighed approximately 20 pounds, and she felt a pull in her back. She states that she was taken home and went to see Dr. Sefton. She initially stayed off work for approximately a year. Over that time, Dr. Sefton sent her to Dr. Siehl, an orthopedic surgeon, and the claimant was in the hospital for seven days. Both Dr. Sefton and Dr. Siehl saw her over the year, and the claimant obtained manipulative therapy to her back and was provided with medications, and then she was able to return to work and work for approximately one year after this. She states that after this one year time period, she became pregnant and gave birth, and that the pregnancy aggravated her back pain. She states that she never returned to work after 1969. She continued to see Dr. Sefton and Dr. Gardner and presently continues to get ultrasound treatment every two weeks, but has had no further hospitalizations nor has she had any surgery on her back. She denies any prolonged rehabilitative services or organized physical therapy. * * *"
 {¶ 14} Dr. Mikutis recited the symptoms and incapacities that claimant described, such as her pain level and being able to lift less than ten pounds. He described his findings upon examination, and then provided the following discussion:
 {¶ 15} "This claimant has had protracted low back pain with claims of a left lower extremity radiculopathy since her injury in 1967. She has had some initial treatment by an orthopedic surgeon but treatments have included office therapy without organized rehabilitation or any type of organized physical therapy. The claimant has only subjective findings of low back pain without any real objective findings and has evidence of symptom magnification. There is absolutely no evidence of a radiculopathy exhibited on examination of this claimant. It is the examiner's opinion that this injury that this claimant's symptoms should have resolved over a reasonable period of time, and this 34-year old interval is quite excessive.
 {¶ 16} "* * *
 {¶ 17} "Based on the A.M.A. Guides, 4th Edition, the claimant has a 0% whole person impairment or a DRE Lumbosacral Category I: Complaints or Symptoms."
 {¶ 18} 5. On a separate form, Dr. Mikutis stated that claimant could perform "medium work," which was defined as work exerting up to 25 pounds of force frequently, up to 50 pounds occasionally, and up to ten pounds constantly.
 {¶ 19} In August 2001, the commission rendered the following decision:
 {¶ 20} "After full consideration of the issue it is the order of the Staff Hearing Officer that the Application filed 01/05/2001, for Permanent and Total Disability Compensation, be denied.
 {¶ 21} "The claimant was examined at the request of the Industrial Commission by Dr. Jeffrey L. Mikutis with regard to the allowed condition, `AGGRAVATION OF PRE-EXISTING DEGENERATIVE DISC DISEASE OF THE LUMBAR SPINE.' Dr. Mikutis opines the claimant's condition to be permanent and to have reached maximum medical improvement. Dr. Mikutis states that the claimant has a 0% whole person impairment as a result of the 02/16/1967 industrial injury. Dr. Mikutis states that the claimant has only subjective findings regarding the low back and has evidence of symptom magnification. Dr. Mikutis opines the claimant to be capable of performing gainful employment and to be able to return to her former position of employment as a cashier/clerk. The Staff Hearing Officer finds that the claimant's condition is permanent and has reached maximum medical improvement. The Staff Hearing Officer finds that the claimant is capable of performing sustained remunerative employment and is not permanently and totally disabled as a result of the 02/16/1967, industrial injury."
Conclusions of Law
 {¶ 22} In this original action in mandamus, claimant challenges the denial of PTD compensation. Specifically, she argues that the report of Dr. Mikutis does not constitute "some evidence" on which the commission may rely because his report is internally inconsistent and it is also inconsistent with claimant's prior awards of compensation for permanent partial disability (PPD).
 {¶ 23} It is well established that, when a physician's report is internally inconsistent, it cannot constitute "some evidence" on which the commission may rely. E.g., State ex rel. Taylor v. Indus. Comm. (1995), 71 Ohio St.3d 582; State ex rel. Lopez v. Indus. Comm. (1994),69 Ohio St.3d 445. Here, claimant argues that Dr. Mikutis' report is fatally contradictory because he stated that claimant had 0% impairment but restricted her from performing heavy labor.
 {¶ 24} The magistrate finds no defect that would bar the report from evidentiary consideration. In addition to providing a narrative report, Dr. Mikutis completed a form that was provided to him. On the form, Dr. Mikutis checked a box to indicate that claimant could perform "medium" strength work. The form defined medium work as requiring the exertion of up to 50 pounds of force occasionally, up to 25 pounds frequently, and up to ten pounds of force constantly. This is not patently inconsistent with 0% impairment.
 {¶ 25} Other evidence indicates that, in her prior position of employment, claimant was a supermarket cashier who was stocking candy racks at the time of injury, while lifting a 20-pound box. Therefore, Dr. Mikutis' opinion essentially indicated that claimant was currently able to perform the type of employment that she had performed at the time of injury, which is consistent with a lack of impairment from the allowed conditions. The magistrate finds that claimant has not met her burden of proving an internal inconsistency.
 {¶ 26} Second, claimant argues that, under principles of res judicata, the commission and Dr. Mikutis were required to find that claimant had a significant percentage of impairment. While the magistrate agrees that principles of res judicata are generally applicable, State ex rel. Crisp v. Indus. Comm. (1992), 64 Ohio St.3d 507, the magistrate finds no violation of those principles in the present action.
 {¶ 27} Claimant cites no authority that imposes a legal duty on the commission or an examining physician, in connection with a PTD application, to accept the percentage of impairment found in a PPD proceeding, and the magistrate is aware of no authority to that effect. Further, the magistrate is aware of no authority for the proposition that a commission order on PPD controls the findings that a doctor may make upon examination in a PTD proceeding. Indeed, even where a commission order has conclusively established an industrial injury and an allowed condition, that order does not control the findings that a physician may make upon examination. In State ex rel. Domjancic v. Indus. Comm. (1994), 69 Ohio St.3d 693, 695-696, the Ohio Supreme Court stated:
 {¶ 28} " * * * It was Dr. Gonzalez's duty to report his actual clinical findings. Obviously, the doctrines of res judicata and collateral estoppel do not apply to limit what a doctor may find during his examination."
 {¶ 29} Accordingly, the magistrate concludes that the principles of res judicata did not require Dr. Mikutis to consider or accept the determination of percentage of impairment made in connection with PPD proceedings. The matters presented by claimant went to the persuasiveness of the medical report but did not disqualify it from consideration.
 {¶ 30} For the foregoing reasons, the magistrate concludes that relator has not met her burden of proof in mandamus and recommends that the court deny the requested writ of mandamus.